STARK et al. v. LEONARD et al. (No. 415.)

(Court of Civil Appeals of Texas. Beaumont. April 23, 1919. Rehearing Denied May 14, 1919.)

1. ADVERSE POSSESSION ⬅109 — REMOVAL FROM PREMISES—ABANDONMENT.

After the acquisition of title by adverse possession, the fact that the adverse owner moves from the premises does not constitute an abandonment in law, nor work a forfeiture of the title acquired as against the former owner.

2. ADVERSE POSSESSION ⬅114(2)—EVIDENCE —SUFFICIENCY.

In a suit for land where plaintiffs set up adverse title, evidence held sufficient to identify the parcel to which they set up an adverse claim.

3. STIPULATIONS ⬅18(1) — EFFECT — LOCATION OF LAND.

Where defendants stipulated as to the title and location of the land which plaintiffs claimed to have acquired by adverse possession, they cannot repudiate the stipulation and defeat recovery on the ground that the land was located elsewhere, etc.

Appeal from District Court, Newton County; W. T. Davis, Judge.

Action by Lou Leonard and others against W. H. Stark and others. From a judgment for plaintiffs, defendants appeal. Affirmed.

Holland & Holland, of Orange, for appellants.

Wightman, Hancock & Wigby, of Newton, for appellees.

BROOKE, J. This is the second appeal in this cause; the opinion on the first appeal being reported in 196 S. W. 709. A full understanding of the case may be better had, perhaps, by referring to the above-styled cause.

One Dick Holmes, the father of Lou Leonard, about 1871, bought what was then known as the Joe Hardy place and gave it to his daughter Lou. At that time the place was supposed to be public land, and Joe Hardy had made a small improvement on it, with the view of purchasing it from the state. After Dick Holmes purchased the place he had the same surveyed by the county surveyor, upon his application to purchase from the state. At this time his daughter Lou was living in the Joe Hardy house with her former husband. After this survey was made for Holmes, the place was known as the Richard Holmes survey, under which name Dick Holmes rendered it for taxes and paid taxes on it for a long number of years. Dick Holmes gave his daughter Mazie a home on this land, but she never lived on it, and he also gave his son Will Holmes a part of the land, and he lived on his place, about 300 yards from the Hardy place, until he died. These various gifts were verbal. Lou Leonard went upon the land with her present husband, Levi, in 1881, and lived there with him until 1888, when they left. After living at various places, they finally pre-empted a piece of land in 1896, where they have since lived.

The land known as the Richard Holmes survey embraced within its boundaries about 20 acres of public land, about 80 acres of the McGee league not in conflict with any other survey, about 40 acres of the McGee league covered by the McWilliams survey in conflict, and about 20 acres of the McWilliams survey not in conflict with the McGee, making 160 acres in all, and the judgment from

which this appeal is perfected is for all of the land.

The first assignment of error made by appellants complains of the action of the court in refusing the request of defendants for a peremptory instruction to the jury to return a verdict in their favor, as shown by their bill of exceptions No. 1. Under this assignment is this proposition:

"Where the only possession of land is shown to have been held under the claim of another who asserts no title in himself, the limitation claim is not available, and the occupancy of appellees, being under a claim of ownership in Richard Holmes, is not such adverse possession in them as to ripen into a limitation title in their favor."

The case was submitted to the jury on special issues, as follows:

"Question No. 1. Did the plaintiffs Lou Leonard and Levi Leonard, or either of them, either in person or through tenants, have peaceable and adverse possession of the land in controversy, cultivating, using, or enjoying the same for a period of ten consecutive years before the filing of this suit? You will answer this question 'Yes' or 'No' as you may find the fact to be.

"Question No. 2. Was the possession of the plaintiffs by themselves or through tenants, if any, of such a nature and character as to put a reasonably prudent person on notice that the plaintiffs were occupying said land and claiming 160 acres thereof? You will answer this question 'Yes' or 'No' as you may determine from the evidence.

"Question No. 3. Do you believe from the evidence that Richard Holmes claimed the land sued for while rendering the same for taxes? You will answer this question 'Yes' or 'No' as you may find the fact to be."

To question No. 1 the jury answered "Yes"; to No. 2 "Yes"; and to No. 3 "No." Therefore by these findings the jury found that Lou Leonard and her husband, either one or both, had adverse possession, cultivation, use, and enjoyment of the same for a period of ten years before the filing of this suit, and that the nature and character of the possession was sufficient to put a reasonably prudent person on notice that the plaintiffs were occupying said land, claiming 160 acres thereof, and that Richard Holmes did not claim the land sued for while rendering the same for taxes. Therefore these findings of the jury answer the contention of appellants, and we hold that the evidence is sufficient to sustain the findings of the jury.

The second and third assignments are:

(a) "The court erred in rendering judgment for plaintiffs for the land sued for upon the verdict of the jury because by the verdict of the jury it was established that plaintiffs asserted claim to a specific tract of land not identified by any evidence as being the land sued for."

(b) "The court erred in submitting to the jury question No. 1 because the undisputed evidence shows that any claim asserted by plaintiffs to any land during their period of occupancy was to a specific survey located by metes and bounds, and not identified by any evidence as being the land sued for."

The following agreement as to title was made by the parties to this suit:

"It is agreed by the parties plaintiff and defendant that plaintiffs claim the land sued for by virtue of the statutes of limitation as shown by their petition, and do not claim to have any record or paper title thereto, but their sole claim thereto rests upon occupancy under the statutes of limitation as stated.

"(2) Defendants own the land (subject to plaintiffs' title by limitation) and claim the same by regular chain of conveyances from the sovereignty to themselves, and the record title thereto is perfect in said defendants, said land having been patented or granted by the state of Texas prior to the year 1860 to John McGee, and that defendants would be entitled to recover and hold the same unless defeated in their claim by the plaintiffs' claim of title by limitation, and no proof of such record title shall be required on the trial of this cause."

The proposition under the second assignment is that, where a claim is made to a specific tract of land while being occupied, the limitation title is confined to the specific land, and a failure to identify the particular land claimed constitutes a failure to make out a case entitling the claimant to recover.

It is argued that plaintiffs' possession of land was under a claim to a specific tract as surveyed for them by the surveyor Nations, and if they could recover under the limitation statutes any land, it would be the land claimed, and a failure to identify the land claimed as being the land sued for would defeat a recovery.

The jury found that Richard Holmes lived on the land from 1872 to 1881, and that at the time Richard Holmes purchased said land he gave it to his daughter Lou, one of the appellees; that appellee Lou Leonard lived on the land from 1872 until 1888, and that appellee and Levi Leonard lived on the land from 1881 to 1888; that appellees, in person or by tenants, have had adverse and peaceable use of the land in controversy for a period of ten consecutive years before this suit was filed; that the possession of the land by appellees was of such nature and character as to constitute notice that they were claiming 160 acres. Appellee Lou Leonard testified to the following: That she and Dan Foster married in the fall and made one crop on the Chas. Holmes place and then moved onto the land in controversy; that her father, Richard Holmes, bought the land in controversy from Joe Hardy; that the land in controversy in this suit is known as the Joe Hardy tract of 160 acres; that she with her father moved on this land the year after her marriage; that she resided on the place two or three months and moved to the Dave McWilliams place near the land, leaving her

father and mother living in the house on the land in controversy; that this McWilliams place was then owned by her father; that her father had Mr. Nations to run it out for her some 40-odd years ago.

It was further testified that about 1872 one B. Z. Powell went with Richard Holmes, the ·father of appellee Lou Leonard, onto the Joe Hardy tract; that Richard Holmes showed him the lines and corners of the 160 acres that he purchased from Joe Hardy; that he went around these same lines of the Joe Hardy tract with Joe McDonald and others for the purpose of showing them the lines of the Joe Hardy tract that Dick Holmes claimed; that they found the lines on the ground and two of the corners that had been shown to him by Holmes, which lines of the Hardy tract included all of the improvements.

The testimony of Lou Leonard showed that her father, Richard Holmes, died before the filing of this suit, but that her mother, Cynthia Holmes, died after the filing hereof; that they died intestate, leaving only three children, the appellee Lou Leonard, Mazie Holmes, and Will Holmes. Said Cynthia and Mazie Holmes on February 28, 1916, by duly recorded deed, conveyed to appellees all of their right, title, and interest in said Joe Hardy survey involved in this cause. On February 2, 1915, said Will Holmes conveyed to the appellee Lou Leonard all of his right, title, and interest in said Joe Hardy survey by duly recorded deed.

[1, 2] The evidence shows that the particular land involved in this suit is the identical tract that was surveyed out by Nations, and is the identical tract which the appellees claim in this suit. There was no abandonment of the possession or claim, but such possession was adverse and matured under the ten-year statute of limitation. It is a well-settled rule of law that, after the acquisition of title under the statutes of limitation, the mere moving from the premises does not constitute an abandonment in law, nor does same work a forfeiture of title acquired as against the former owner thereof.

By the agreement in this cause the appellants are precluded from claiming that any of the land in controversy was public domain. There is no merit in said second and third assignments, and in our opinion the same should be overruled.

The fourth assignment of error is as follows:

"The court erred in rendering judgment for the plaintiffs for the land sued for because it was shown by the undisputed evidence that a portion of the land was public domain during all of the period of occupancy of the plaintiff and during such time belonged to the state of Texas, and could not be acquired under the statutes of limitation, and there was no evidence to show what portion of said land was such public domain."

We have discussed this assignment, and in our judgment there is no merit in the same, and it is overruled.

The fifth assignment is:

"The court erred in rendering judgment for the plaintiffs for the land sued for because it is shown by the undisputed evidence that a portion of same is on the David McWilliams survey, a survey older than the survey under which plaintiffs claim, and that during the period of occupancy by plaintiffs said David McWilliams survey was in the actual possession of the claimant and owner thereof, and it is not shown what portion of said McWilliams survey was in the actual possession of plaintiffs or the extent of the conflict between said surveys."

[3] By the agreement of appellees the land in controversy was patented in 1860. The rule is that parties are bound by agreements, and that, where a party to a cause, by agreement or otherwise, invites a finding as to a particular fact, he cannot complain that such finding is made. The appellants agreed that all of the land in controversy was on the McGee league, and they are precluded by that agreement from claiming that the south part of the Joe Hardy tract extended a short distance south of the McGee.

We have for the second time carefully gone over the statement of facts and the assignments of error in this cause. The court submitted the cause on special issues, which were found in favor of appellees. A thorough consideration of the record leads us to the conclusion that no error has been committed, and that in all things justice has been done.

The cause is affirmed.